**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| ROBERT YOUNG, | ) | |
| Plaintiff, | ) | |
| v. | ) | 02: 06cv137 |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

September 26, 2006

**I.      Introduction**

Plaintiff, Robert Young, brought this action pursuant to 42 U.S.C. §§ 405(g), for

judicial review of the final determination of the Commissioner of Social Security

("Commissioner") which denied his application for supplemental security income ("SSI") and

disability insurance benefits ("DIB") under title II of the Social Security Act ("Act"), 42 U.S.C.

§§ 401-403; 1381-1383(f).

**II.      Background**

**A.      Facts**

Plaintiff was born on November 29, 1961, and was 43 years-old at the time of the

administrative hearing.  R.19, 363.  He has an eleventh-grade education, and relevant work

experience as a groundskeeper, stock clerk/material handler, assembler, and construction

worker.  R.63, 68.  Plaintiff alleges that he has been disabled since June 15, 2003, because of a

heart condition and chronic back pain.  R.17.  The record reflects that Plaintiff has not engaged

in substantial gainful work activity since alleging disability in 2003.  R.17.

### B.    Procedural History

Plaintiff filed an application for SSI and DIB on August 29, 2003, in which he claimed total disability since June 15, 2003.  R.17.  An administrative hearing was held before Administrative Law Judge Edward J. Barnes ("ALJ") on October 12, 2004, at which Plaintiff elected to proceed without counsel.  R.16, 359.  Denise Young, Plaintiff's wife, also testified on his behalf.  R.377-81.  Finally, the ALJ took the testimony of  Tim Mahler, an impartial vocational expert.  R. 381-86.

After waiving his right to be represented at the hearing by an attorney, Plaintiff commenced his testimony.  *See* R.359-76.  At the time of the hearing, Plaintiff was 6'0" tall and weighed 320 pounds.  R.368.  Plaintiff stated that he lived at home with his wife and three children.  R.363.  He admitted that his wife's income was the family's sole source of financial support.  *See* R.369.  He claimed that he had quit his job in the garden department at Wal-Mart when the pain in his back became unbearable.  R.365-66, 377.

As to his impairments, Plaintiff explained that MRIs showed that he had disc space narrowing, but admitted that his doctors advised treating the pain with medication instead of surgery.  *See* R.366-67, 372.  Despite this treatment, however, Plaintiff claimed that his back pain was unremitting.  R.373.  Plaintiff also estimated that, on average, he could walk approximately one mile before his back began to hurt him.  R.370.  Nevertheless, Plaintiff claimed that, when his pain was at its worst, he could not even get out of bed, let alone walk any distance.  R.370, 373.  Additionally, Plaintiff stated that he took heart medication, but added that, even with medication, he experienced occasional, apparently random chest pains.  R.372-73.

Plaintiff also testified about how his impairments affected his level of activity.  He explained that his daily routine involved getting up, taking his medication, having breakfast with his wife, and doing laundry or whatever else he could do around the house.  R.374.  Additionally, Plaintiff admitted that he had a current driver's license, and conceded that he drove "a good bit," taking his wife to and from work and his son from place to place on a daily basis.  R.368-69.  He estimated that he spent approximately an hour per day behind the wheel of the car.  R.369.  Because of his pain, Plaintiff stated that he could no longer play football or basketball with his sons — activities he previously had enjoyed in his spare time — or engage in any other activity involving twisting, bending, lifting, jumping, or running.  R.371.  Plaintiff added that it was "hard" for him to go hunting or fishing, two other pastimes that he had enjoyed.  R.374.  Plaintiff denied spending a lot of time in front of the television, however, and stated that he would visit family, "go grocery shopping, whatever needs to be done."  R.375.  He explained that he dressed himself, but claimed to have difficulty putting on his shoes and socks.  R.375-76.

Next, the ALJ heard the testimony of Denise Young, Plaintiff's wife.  R.377-81.  Mrs. Young corroborated Plaintiff's testimony generally, stating that "he's mostly laying [*sic*] more than he is up."  R.378.  She added that Plaintiff's doctor put him on Prozac because she told the doctor that he had been having suicidal thoughts and stated that, in her opinion, Plaintiff was depressed because his doctors had been telling him that there was little they could do for his other impairments.  *See* R.377, 379.  She also explained that Plaintiff also had edema in his legs which could no longer be medicated because of his heart condition.  R.378.  Mrs. Young admitted, however, that Plaintiff occasionally went fishing.  R.378.

Finally, the ALJ heard from Tim Mahler, the vocational expert ("VE").  *See* R.381-87.  After classifying Plaintiff's prior work as a material-handler, assembler, groundskeeper, and construction worker as medium to heavy, Mr. Mahler opined that the skills Plaintiff had obtained in these jobs were not transferrable.  R.382.  The ALJ then posed the first of two hypothetical questions to the VE:

[Assume] we have a hypothetical individual who's a younger individual with limited education and a prior work history similar to that of [Plaintiff] and [that] this hypothetical individual suffers from pain, depression, and fatigue [which are] not amenable to treatment and [are] so severe one day a week [INAUDIBLE] one or more days [INAUDIBLE] he just couldn't get up and go to work and put in a full day's work[.]

*See* R. 383.  Because the VE explained that unskilled laborers could miss no more than one day per month on average, he testified that this hypothetical person would be unemployable for all intents and purposes.  R.383-84.  The ALJ then posed his second hypothetical question to the expert:

[Assume] we have a person who's a younger individual with a limited education and a prior work history such as [Plaintiff's] and what if with accommodations and treatment this hypothetical person might be capable of doing light or sedentary jobs that didn't take a great deal of concentrating, simple tasks and wouldn't involve public contact and would allow this person a sit/stand option on a job.

*See* R.385.  The VE opined that this second hypothetical person could perform an array of light jobs, including that of product inspector, hand-packer, laundry folder, and sorter/grater, all of which existed in significant numbers in the local and national economies.  R.386.  He explained that, in his 25 years of experience in placing disabled workers, he had found that these positions typically would offer sit-stand options.  R.386.  After the ALJ ascertained that none of the witnesses had anything further to add, he left the record open for the results of the psychological evaluation and adjourned the hearing.  R.387-88.

On January 14, 2005, the ALJ rendered an unfavorable decision to Plaintiff.  *See* R.16-27.  The ALJ's decision became the final decision of the Commissioner on December 1, 2005, when the Appeals Council denied Plaintiff's request to review the decision of the ALJ.  R.5-9.  On February 3, 2006, Plaintiff timely filed his Complaint in this Court in which he sought judicial review of the decision the ALJ's decision.

The parties have filed cross-motions for summary judgment.  In his motion, Plaintiff contends that the ALJ erred in determining that his mental impairments were non-severe.  (*See* Brief in Support of Plaintiff's Motion for Summary Judgment ("Pl. Brief") at 8-13).  Further, Plaintiff insists that the ALJ erred in relying on the vocational expert's response to a hypothetical question which did not accurately state Plaintiff's impairments.  (Pl. Brief at 14-18).  The Commissioner contends that the decision of the ALJ should be affirmed as it is supported by substantial evidence.[1]  (*See generally* Brief in Support of Commissioner's Motion

---

[1]      The Court observes that the "Statement of the Case" section of the Commissioner's Brief appears to describe an entirely different matter than the one before the Court.  (*See* Comm. Br. at 2).  As the Clerk informed Commissioner on August 21, 2006, the Commissioner's Brief is defective insofar as it attempts to collapse a Motion into an Opposition pleading.

for Summary Judgment ("Comm. Brief")).   The Court agrees with the Commissioner and will therefore grant the motion for summary judgment filed by the Commissioner and deny the motion for summary judgment filed by Plaintiff.

**III.     Legal Analysis**

A.     Standard of Review

The Act limits judicial review of disability claims to the Commissioner's final decision.  *See* 42 U.S.C. § 405(g).  If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court.  *See id.*; *see also Schaudeck v. Comm'n of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999).   The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  It consists of more than a scintilla of evidence, but less than a preponderance.  *See Stunkard v. Secretary of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988).

When determining whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation.  *See* 20 C.F.R. §§ 404.1520 and 416.920 (1995).  This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work.  *See* 42 U.S.C . § 404.1520; *see also Burnett v. Commissioner of Social Security*, 220 F.3d 112,  118-19 (3d Cir. 2000) (*quoting Plummer v. Apfel*, 186, F.3d 422, 428 (3d Cir. 1999)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *See Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423 (d)(1) (1982). This showing may be made in either of two ways:

> (1) by introducing medical evidence that the claimant is disabled *per se* because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1. *See Heckler v. Campbell*, 461 U.S. 458 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777; or,
>
> (2) in the event that claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

In order to prove disability under the second method, a claimant first must demonstrate the existence of a medically determinable disability that precludes him from returning to his former job. *See Stunkard*, 841 F.2d at 59; *see also Kangas*, 823 F.2d at 777. Once it is shown that claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given claimant's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *See Stunkard*, 842 F.2d at 59; *see also Kangas*, 823 F.2d at 777; *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986); *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

Where a claimant has multiple impairments which may not individually reach the level of severity necessary to qualify any one impairment for Listed Impairment status, the Commissioner nevertheless must consider all of the impairments in combination to determine

7

whether, collectively, they meet or equal the severity of a Listed Impairment. *See Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity.")

In Plaintiff's case, the ALJ determined that he was not disabled at step-five of the sequential inquiry. Specifically, the ALJ found at step one that Plaintiff had "not engaged in substantial gainful activity since his alleged onset date." R.17. At steps two and three, the ALJ found that, although Plaintiff suffered from "obesity, coronary artery disease, and degenerative disc disease" — all of which were "severe" within the meaning of the regulations — these impairments were not sufficiently severe to meet or equal a Listing.[2] R.18-20. After explaining that Plaintiff's "statements concerning his impairments and their impact on his ability to work are not entirely credible in light of the reports of the treating and examining practitioners," R.22-23, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform "a significant range of light work." R.23. In light of this RFC, the ALJ reached the step-four conclusion that Plaintiff could not return to any of his former jobs, all of which were performed at the medium or heavy level of exertion. R.24. At step five, however, the ALJ concluded that Plaintiff could perform any of the light work identified by the VE at the hearing, including the jobs of inspector/checker, hand packer, laundry folder, and sorter/grader. R.24-25. Having found that the Commissioner met her burden of proof at step-five, the ALJ determined that Plaintiff was not "disabled" within the meaning of the Act. *See* R.26-27.

---

[2]     The ALJ also found that Plaintiff's alleged depression and anxiety were not "severe" within the meaning of the regulations. *See* R.20. Because this finding forms the nucleus of both of Plaintiff's challenges to the decision, it will be explained at greater length *infra*.

**B.      Discussion**

As set forth in the Act and applicable case law, this Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record.  *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987).  The Court must simply review the findings and conclusions of the ALJ to determine whether they are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Schaudeck*, 181 F.3d at 431.

1.      *Substantial Evidence Supports The ALJ's Determination That Plaintiff's Mental Impairment Was Not "Serious" Within The Meaning Of The Regulations*

Plaintiff's first objection to the decision is that, as he reads it, there is a "strong likelihood that the ALJ intended to find that [his] mental impairments are 'not severe' as that term is defined in [the] regulations." (*See* Pl. Brief at 8).  Plaintiff complains that the ALJ reached this conclusion by crediting the opinion of a reviewing physician (who opined that his mental impairment was not severe) over that of an examining physician (whose conclusions are, according to Plaintiff, "diametrically opposed" to a finding of non-severity).  (*See* Pl. Brief at 13).  The Commissioner disagrees, insisting that the opinions of the reviewing and examining physicians both support a finding that Plaintiff's mental impairment was non-severe.  (*See* Comm. Brief at 9).  After reviewing the decision in light of the medical evidence, the Court agrees with the Commissioner.

At step two of the five-step sequential inquiry, an ALJ must determine whether the claimant has a medically severe impairment or combination of impairments.  *See Bowen v.*

9

*Yuckert*, 482 U.S. 137, 140-41 (1987); *see also* Social Security Ruling ("SSR") 86-8.  The

SSRs,[3] as well as case law applying them, discuss the step-two severity determination in terms

of whether an impairment is or is not "severe."  According to the Commissioner's regulations,

an impairment is not severe if it does not significantly limit a claimant's physical or mental

ability to do basic work activities.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).  Basic work

activities are "the abilities and aptitudes to do most jobs."  *See* 20 C.F.R. § 404.1521(b).  A

non-severe impairment is a "slight abnormality ... which would have no more than a minimal

effect on an individual's ability to work," irrespective of age, education or work experience.

*See Bowen*, 482 U.S. at 154 n. 12.

In this case, the ALJ had at his disposal three different categories of medical

evidence with which to evaluate the severity Plaintiff's alleged mental impairments: (1) the

report of the Agency physician who reviewed Plaintiff's medical file; (2) the conclusions of the

psychologist who examined Plaintiff at the request of the Commissioner; and (3) the medical

record of the treatment that Plaintiff actually received for his mental impairments from his

primary care physician.  Because of the importance of this evidence to the ALJ's determination

that Plaintiff's medical impairments were non-severe, it is worth summarizing *seriatim*.

Dr. Richard Heil, Ph.D., was the Agency physician who reviewed Plaintiff's file on

December 29, 2003.  R.272-84.  Dr. Heil determined that he had a non-severe anxiety disorder.

R.272, 277.  He found no evidence of decompensation or difficulties in social functioning, mild

---

[3]      Social Security Rulings constitute the SSA's interpretations of the statute it
administers and of its own regulations.  *Newell v. Commissioner of Social Security*, 347 F.3d 541,
546 n.4 (3d Cir. 2003).  SSRs do not have the force of law, *see id.*; nevertheless, once published,
they are binding on all components of the SSA.  *See Walton v. Halter*, 243 F.3d 703, 708 (3d Cir.
2001).

restrictions of daily living, and mild impairment of concentration, persistence or pace. R.282. Dr. Heil observed that Plaintiff's primary care physician was treating his anxiety with medication, and noted that Plaintiff's statements about his mental limitations were only "partially credible." *See* R.284.

Dr. Lanny Detore, Ed.D., was the Agency physician who examined Plaintiff at the request of the ALJ after the hearing. R.387 *see also* R.334-38. Dr. Detore noted that Plaintiff reported depression and anxiety. R.336. During the consultative examination, Plaintiff told Dr. Detore that his primary care physician had prescribed Prozac for depression, which he had taken for approximately three years with "no real significant difference" in his condition. R.335. Although Dr. Detore noted that Plaintiff had "some strong elements of depression and anxiety," he repeatedly stressed that some undiagnosed other problem seemed to be the root of Plaintiff's primary complaint, which was fatigue. *See* R.335, 337. Dr. Detore ultimately diagnosed Plaintiff with depression and anxiety — both of moderate severity — with occasional moderate panic attacks, and gave a rule-out-diagnosis of "an underlying fatigue syndrome." R.337-38. Ultimately, Dr. Detore found that Plaintiff had no limitation in understanding and remembering simple instructions but had slight-to-moderate difficulties in carrying out such instructions, work-related judgments, and understanding, remembering, or carrying out detailed instructions. R.340. Additionally, this physician opined that Plaintiff had moderate limitations in interacting properly with supervisors, coworkers, and the public, as well as moderate limitations in responding appropriately to pressures and changes in the workplace. R.340. Dr. Detore did conclude, however, that Plaintiff could manage his own funds. R.341.

Finally, the record contains the treatment notes of Dr. Brian Taylor, Plaintiff's primary care physician and the only doctor ever to have treated Plaintiff for any kind of mental impairment. *See* R. 201-30. Despite Plaintiff's claim that he had been treated for depression with Prozac, the medical record contains *no* evidence — other than his and his wife's statements — that anyone ever told any of Plaintiff's treating physicians that he was depressed.[4] Rather, the record shows only that Plaintiff complained of anxiety to Dr. Taylor. *See* R.220-21. A review of these notes confirms that Dr. Taylor prescribed *Paxil* for *anxiety* – not Prozac for depression. R.173, 221. Furthermore, and contrary to Plaintiff's claim to Dr. Detore that he had experienced no alleviation of symptoms on his psychotropic medication, the treatment notes indicate that he told his own doctor that his anxiety was "better" (or that he felt "less agitated") on his anti-anxiety medication. *See* R.220, 290.

In this case, after reviewing the medical record, the ALJ found that Plaintiff "has obesity, coronary artery disease and degenerative disc disease, impairments that are 'severe' within the meaning of the Regulations but not 'severe' enough to meet or medically equal" a Listing. R.20. As to Plaintiff's mental impairments, however, the ALJ stated:

> Although [Plaintiff] has also alleged depression and anxiety as additional
> impairments, these conditions are not being treated other than with Prozac
> from his primary care physician. There is minimal clinical evidence to

---

[4]    Several portions of the record memorialize Plaintiff's and his wife's *statements* that he had been diagnosed with depression, and was taking Prozac. *See* R. 107, 110, 112, 115, 320, 335, 355, 377; *but see* R. 67 (medication list which makes no mention of Prozac), 144 (same), 173 (same).

corroborate or support any finding of significant vocational impact related

to these conditions.

R.20.  Read together, these two passages support Plaintiff's conclusion that the ALJ implicitly

found that his mental impairments were not severe.  The Court disagrees, however, with

Plaintiff's contention that the ALJ's finding lacked the support of substantial evidence.

The parties have briefed this issue as though it presented only a conflict between the

examining physician's opinion and the reviewing physician's conclusions.  (*See* Pl. Brief at 13;

*see also* Comm. Brief at 9).  As the above-quoted paragraph indicates, however, the ALJ

concluded that Plaintiff's mental impairment was non-severe primarily because his *treating*

*physician* had controlled his symptoms with medication, had never deemed his impairment

serious enough to refer Plaintiff for psychiatric evaluation, and had never opined that his mental

impairment limited his functionality in any way.  *See* R.20.  Although the ALJ appears to have

been overly-generous to Plaintiff in accepting his unsupported statement that he had been

medicated for depression, the record otherwise supports his construction of the treatment notes.

*See* R.220-22, 290.  The opinions of a treating physician, both express and implicit,[5] are

accorded "great weight, especially when th[ose] opinions reflect expert judgment based on a

continuing observation of the patient's condition over a prolonged period of time."  *Morales v.*

*Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (citation and internal quotation marks omitted); *see*

---

[5]      Incidentally, it was presumptively inappropriate for the ALJ to infer that the treating physician did not regard Plaintiff's mental impairment as severe from the lack of treatment notes to the contrary.  *See Waters v. Barnhart*, No. Civ.A. 01-712-KAJ, 2004 WL 163702, at *6 (D. Del. Jan. 20, 2004) (observing that the ALJ could infer an opinion of non-disability from a physician who treated the claimant conservatively but offered no opinion as to a claimant's ability to perform work-related activities, stating: "the ALJ is entitled to rely on what the record says and doesn't say.").

*also Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993) (noting that ALJs are obliged to give greater weight to the findings of a claimant's treating physician than to those of his examining physician).

On even stronger treatment evidence than this, impairments have been held to be not severe within the meaning of the regulations.  For example, in *D'Arrigo v. Barnhart*, No. 05-5394,  2006 WL 2520524, (E.D. Pa. Aug. 23, 2006), the court very recently faced a very similar factual situation:

> The claimant alleged disability due to depression. The treatment notes contain one
>
> notation that the claimant takes Buspar for depression which was prescribed by
>
> her treating physician [....]. [The treating physician's] treatment notes contain no
>
> indication of a diagnosis of psychopathology. There is no medical evidence of
>
> symptoms from a mental impairment. There is no diagnosis for a mental
>
> impairment.  There is no evidence of treatment, therapy or medication prescribed
>
> or suggested for a mental impairment.  There is no evidence that the claimant was
>
> ever referred to a mental health specialist for treatment of a mental impairment.

*See D'Arrigo,* 2006 WL 2520524 at *4 (citation to record omitted).  The court upheld the ALJ's finding that the claimant's depression was not severe, explaining: "even though the inquiry is only a *de minimus* screening device, [the claimant] needed more than just evidence of an impairment for it to be considered 'severe,' but rather she also needed evidence of the impairment significantly limiting her ability to do basic work activities."  *Id.* (internal quotation marks omitted); *see also Ellis v. Barnhart*, 2005 U.S. Dist. LEXIS 2641, at *6 (E.D. Pa. Feb. 22, 2005) (upholding the ALJ's finding that a claimant's depression was non-severe based on a

single psychological evaluation, continuously unremarkable medical reports, evidence that the claimant's symptoms were controlled with Prozac, and the lack of additional treatment).

When viewed in the context of the treating physician's notes, it is clear that substantial evidence supports the conclusions that the ALJ drew from the observations of the reviewing and examining physicians.  Specifically, the reviewing physician correctly noted that Plaintiff only had been treated for anxiety with medication, whereas the examining physician's conclusions were predicated on Plaintiff's (unsupported) statement that he had been treated with Prozac for depression.  *Compare* R.284 *with* R.335.  Additionally, the examining physician accepted Plaintiff's statement that the medicine he took for his mental impairment produced no change in his symptoms, a statement contradicted by the record.  *Compare* R.335 *with* R.220-22, 290.   Ordinarily, the opinions of a reviewing physician are entitled to less weight than those of a physician who has examined the claimant.  *See Wier v. Heckler*, 734 F.2d 955, 963 (3d Cir. 1984); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  But as between the opinions of Dr. Heil and Dr. Detore, the opinion of the reviewing physician was more consistent with the record as a whole, and deserved greater weight than the opinion of the examining physician.[6]  *See* 20 C.F.R. § 416.927(d)(4).

---

[6]       Plaintiff makes much of the fact that the examining physician rated him "moderately" impaired in several areas of functioning.  (*See* Pl. Brief at 11).  Although the regulations do explain that functional ratings of "none" or "mild" impairment are generally indicative of a non-severe mental impairment, they do not state that ratings of "moderate" impairment necessarily mean that the impairment is "severe."  *See* 20 C.F.R. 404.1520a(d)(1). The Court finds that, even if Dr. Detore's ratings were fully credited, they would not compel the conclusion that Plaintiff's depression was a "severe" impairment within the meaning of the regulations.  *See, e.g., Rodriguez v. Barnhart*, No. Civ.A. 04-4755, 2006 WL 208646, at *1 (E.D. Pa. Jan. 26, 2006) (finding substantial evidence for the ALJ's conclusion that the claimant's impairments were not serious within the meaning of the regulations, even in the face of

(continued...)

In the end, this is one of the unusual cases in which the examining physician's access to the claimant actually placed him at a *disadvantage* because it lulled him into relying on statements from a claimant whose testimony could not be squared with the medical record, and which testimony therefore was found to be less than fully credible by the ALJ.[7]  After careful perusal of the record, the Court concludes that the reviewing physician's report is more consistent with the medical evidence — including the notes of Plaintiff's own treating physician — than was that of the examining physician.  Because the balance which the ALJ struck enjoys the support of substantial evidence, it will not be disturbed.

> 2. *The ALJ's Hypothetical Question To The Vocational Expert Contained All Of The Limitations For Which There Was Substantial Evidentiary Support*

Finally, Plaintiff complains that the hypothetical question the ALJ relied upon in reaching his decision was faulty in that it omitted any reference to his mental impairments.  (*See*

---

[6](...continued)
"conflicting evidence as to the severity of [the claimant's] mental impairments," and even though "a number of reports, particularly the more recent ones, place[d] [the claimant] at a level of 'moderate'" impairment).

[7]    Plaintiff as not challenged the ALJ's finding that his testimony was less than fully credible.  (*See generally* Pl. Brief).  That being so, the Court will not scrutinize the ALJ's credibility determination.  *See Hudson v. Sullivan*, 717 F.Supp. 340, 345 (W.D. Pa. 1989)(declining to overturn an ALJ's decision on a ground that the claimant had not raised).  To the extent that Dr. Detore's impressions were based on Plaintiff's subjective complaints — and, as Dr. Detore conducted no testing, those impressions were almost entirely based on Plaintiff's comments during the examination — they are properly discredited to the same extent that Plaintiff was found not credible.  See 20 C.F.R. § 416.929 (providing that the ALJ is the ultimate fact finder and bears the responsibility for making determinations of a claimant's credibility); *accord* S.S.R. 96-7p; *see also Rodriguez v. Barnhart*, No. Civ.A. 04-5375,  2005 WL 2250797, at *8 (E.D. Pa. Sep 15, 2005) (noting that, absent corroborating clinical data, a claimant's psychiatric complaints to doctors are only as valuable as the claimant is credible).

Pl. Brief at 14-17). The Commissioner disagrees, contending that the hypothetical question covered all of Plaintiff's physical and mental limitations, and included reference to all of the functional effects of Plaintiff's mental impairments for which there was substantial evidentiary support. (*See* Comm. Brief at 10-14). After reviewing the record, the Court agrees with Commissioner.

It is axiomatic that a vocational expert's hypothetical must contain a complete and accurate factual basis in order for the conclusion to constitute substantial evidence. *See Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004). This means that, if the hypothetical question that the ALJ poses to a VE fails to reflect all of the claimant's impairments that are supported by the record, the VE's answer cannot be considered substantial evidence. *See Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir.1987). This axiom has limits, however. As the Third Circuit has noted, the ALJ is not required to "submit to the vocational expert every impairment *alleged* by a claimant." *Rutherford v. Barnhart*, 300 F.3d 546, 554 (3d Cir. 2005). Thus, although a hypothetical question must include all of the claimant's credibly established limitations, a VE need not be apprised of limitations which have been found to be either not credible, or determined not to affect the claimant's RFC. *See id.*; *see also Burns v. Barnhart*, 312 F.3d 113, 121-23 (3d Cir. 2002); *Podeworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984).

As noted above, the ALJ posed two questions to the VE at Plaintiff's hearing. The chief difference between the two questions was essentially this: in the first question, the ALJ asked the VE to assume that the hypothetical person's symptoms were so uncontrolled as to cause him to miss work one day per week; whereas in the second question, the VE was asked to assume that — although the hypothetical person would need a job without "a great deal of

concentrating" and which involved only "simple tasks [which] wouldn't involve public contact" — the other symptoms of his mental impairment were controlled with medication such that no significant absenteeism would occur. *See* R. 383, 385.  The ALJ ultimately adopted the limitations he posed in his second question to the VE, explaining that the evidence had shown that Plaintiff's mental impairments were sufficiently under control that he had enough concentration to read a book and perform minor household repairs, and was comfortable enough in public to drive and go grocery shopping. *See* R.20, 23.  Substantial evidence supports this determination.

As explained above, there is no medical evidence that any doctor ever treated Plaintiff for depression, although the ALJ apparently gave Plaintiff the benefit of the doubt when he assumed contrariwise. *See* R.20.  The ALJ concluded that the conservative treatment Plaintiff received for his mental impairment reflected its relatively mild manifestation, see R.20, and the record supports the inference that Plaintiff's anxiety symptoms were controlled with medication. *See* R.220-22, 290.  It bears emphasis that a condition that is reasonably controlled with treatment and medication cannot serve as a basis for disability. *See* 20 C.F.R. § 416.930(a); *see also* ; *see also Brown v. Bowen*, 845 F.2d 1211, 1215 (3d Cir. 1988) (stating that if treatment or medication can control an impairment, it cannot be considered disabling). To the extent Plaintiff insists that his impairments produced greater limitations than those the ALJ posed in his second question to the vocational expert — including, for example, the need to miss one day of work per week — the ALJ implicitly rejected this claim in the course of finding that Plaintiff's testimony about his subjective symptoms was not fully credible.  R.22.

As Plaintiff has not challenged the ALJ's adverse credibility determination, the Court will not review it *sua sponte*. *See Hudson*, 717 F.Supp. at 345.

Where, as here, the ALJ poses more than one hypothetical question to the VE, "[i]t is within the ALJ's discretion to evaluate the credibility of the assumptions and base his decision on one set of facts rather than another." *Davis v. Califano*, 439 F.Supp. 94, 99 (E.D. Pa. 1977). A review of the medical record shows that Plaintiff took Paxil for anxiety, reported an alleviation of his symptoms on that medication, and never told any of his doctors of the depression he now asserts. The only evidence that Plaintiff experienced depression or endured greater limitations from his mental impairment came from his and his wife's testimony. The ALJ rejected the testimony regarding Plaintiff's subjective symptoms as less than fully credible, a ruling Plaintiff does not challenge. The Court cannot say that the hypothetical question the ALJ relied upon in deriving Plaintiff's RFC contained fewer than all of the functional limitations supported by substantial evidence. That being so, the ALJ properly relied on the VE's answer to that hypothetical question to satisfy the Commissioner's burden of establishing that there are jobs available which the claimant can perform notwithstanding his limitations. *See Plummer*, 186 F.3d at 431.

## IV.      Conclusion

It is undeniable that Plaintiff has a number of impairments, and this Court is sympathetic and aware of the challenges which Plaintiff faces in seeking gainful employment. It is also clear that the decision the Commissioner rendered in this case was far from a paragon of clarity. Nevertheless, "[w]e are not in search of a perfect opinion — we look at the ALJ's opinion to see if it is supported by substantial evidence and if it is not we have a duty to

remand." *Foley v. Barnhart*, 432 F.Supp.2d 465, 479 (M.D. Pa. 2005). Under the applicable standards of review and the current state of the record, Court must defer to the reasonable findings of the ALJ and his conclusion that Plaintiff is not disabled within the meaning of the Social Security Act, and that he remains able to perform a wide range of work at the light exertional level.

For these reasons, the Court will grant the Motion for Summary Judgment filed by the Commissioner and deny the Motion for Summary Judgment filed by Plaintiff.

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROBERT F. YOUNG | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02: 06 cv 137 |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER OF COURT**

     **AND NOW**, this 26th day of September, 2006, in accordance with the foregoing memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED, AND DECREED** that:

    1.     Defendant's Motion for Summary Judgment is GRANTED;

    2.     Plaintiff's Motion for Summary Judgment is DENIED; and

    3.     The Clerk will docket this case as closed.

                    BY THE COURT:

                    s/Terrence F. McVerry
                    United States District  Court Judge

cc:     Karl E. Osterhout, Esquire
        Email: karl@keolaw.com

        Lee Karl, AUSA
        Email: lee.karl@usdoj.gov